IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 10-cv-00568-MEH-BNB

VAIL DEVELOPMENT 09 LLC,

    Plaintiff,

v.

GROUND ENGINEERING CONSULTANTS, INC.,

    Defendant.

---

**ORDER ON MOTION TO DISMISS AND TO ABSTAIN
FROM EXERCISING JURISDICTION**

---

**Michael E. Hegarty, United States Magistrate Judge.**

Pending before the Court is Defendant's Motion to Dismiss and to Abstain from Exercising Jurisdiction [filed May 12, 2010; docket #13] and Defendant's Motion to Stay Case Pending Disposition of Related State Action [filed July 6, 2010; docket #32]. Pursuant to 28 U.S.C. § 636(c), the parties consented to the jurisdiction of a magistrate judge to hear this matter. On June 1, 2010, Chief Judge Wiley Daniel referred the matter this Court for determination. The Motion to Dismiss is fully briefed, and oral argument would not assist the Court in its adjudication. For the reasons that follow, the motions are **denied**.

**BACKGROUND**

Plaintiff Vail Development 09 LLC ("Vail 09") initiated this action on March 10, 2010. Typically, the Court would summarize the Plaintiff's factual allegations for an analysis pursuant to Fed. R. Civ. P. 12(b)(1); however, the Court will restate Plaintiff's allegations in full here only for purposes of comparison to the allegations raised in the state court action, which is necessary for a

determination of the application of abstention doctrines. The following stated allegations are not findings of fact by this Court.

**I.     Complaint**

On or about January 24, 2007, Black Diamond Resorts – Vail LLC ("Black Diamond"), a Delaware limited liability company, as Owner, entered into a contract with Layton Construction Co., Inc. ("Layton"), as Contractor, wherein Layton agreed to construct a project known and described as the Vail Four Seasons Resort, a hotel and residential condominium located at 1 Vail Road, Vail Colorado 81657 (the "Project"). The Project consists of one structure (the "Structure"), consisting of approximately ten levels, and approximately 500,000 square feet of space, which includes (i) a five-star hotel containing 120 guest rooms and suites; (ii) 16 whole ownership residential condominium units; (iii) 19 fractional ownership residential condominium units; (iv) 215 parking spaces; and (v) approximately 35,000 square feet of restaurant, lounge, spa/fitness, retail, meeting room and banquet space.

Black Diamond obtained financing for the Project through a loan agreement with Barclay's Capital Real Estate, Inc. ("BCRE"). On or about May 2, 2007, Black Diamond entered into a contract with Defendant Ground Engineering Consultants, Inc. ("Ground"), wherein Ground agreed to provide construction materials testing services for the Project (the "Ground Contract").

After Black Diamond defaulted on its loan obligations to BCRE in connection with the Project, BCRE became entitled to exercise certain rights of Black Diamond, as Owner of the Project. On July 6, 2009, BCRE designated Vail 09 as its nominee to exercise certain of the Owner's rights for the completion of the Project. That same day, Black Diamond assigned its rights under certain agreements and contracts to Vail 09 pursuant to an Assignment and Assumption of Intangible

Property ("Assignment and Assumption"). Accordingly, Vail 09 alleges it is entitled to assert all of the rights of Black Diamond under the Ground Contract.

Pursuant to the Ground Contract, Ground was required to provide, *inter alia*, (1) concrete testing; (2) structural steel weld and bolted connection inspection and testing; (3) masonry inspection; (4) post-tension beam testing; and (5) summaries of tendon stressing data. Ground Contract, Exhibit 1 at 2-3, docket #1-1. The Ground Contract provides that "An engineering technician will be provided to observe reinforced steel. GROUND will observe the post tension tendon placement prior to placement of concrete. A technician will observe the techniques and procedures of the tendon concrete contractor during tendon stressing. A GROUND representative will log tendon lengths prior to and after stressing. A summary of the tendon stressing data will be provided to the owner." *Id.* at 3.

The summaries of tendon stressing data that Ground was required to prepare and provide to the Owner are called "PT Elongation Reports" (the "Elongation Reports"). The Elongation Reports are critical to the completion of the Project, because they confirm that the Structure is structurally sound, and the Elongation Reports facilitate the approval of the occupancy of the Structure by the Project's engineer of record and the Town of Vail. Pursuant to the Ground Contract, Ground was required to retain copies of the Elongation Reports for a minimum of three years. Ground Contract, Exhibit 1 at 6.

Vail 09 alleges that Ground did not provide the Elongation Reports to the Owner or the Owner's representative, as required by the Ground Contract. Rather, Ground provided a small number of the Elongation Reports to Layton, the Contractor. Vail 09 states it has been able to locate only a fraction of the Elongation Reports that were required to be prepared by Ground, pursuant to

3

the Ground Contract. In addition, Vail 09 alleges Ground did not retain copies of the Elongation Reports for a period of three years as required by the Ground Contract. Vail 09 has requested that Ground provide copies of the Elongation Reports for each of the floors of the building, and Ground has been unable to provide any of the Elongation Reports.

As a result of Ground's alleged inability to provide the Elongation Reports, Vail 09 has been forced to retest the post-tensioning of the Structure in order to establish after-the-fact post-tensioning strand forces, tendon profiles, and horizontal position of the tendons, in order to verify that the Structure is structurally sound and to facilitate approval of the Structure from the Project's engineer of record and the Town of Vail.

Ground agreed to provide its inspection and testing services in accordance with a professional standard of care, as follows: GROUND agreed "in connection with services performed under this Agreement that such services are performed with the care and skill ordinarily exercised by members of the profession practicing under similar conditions at the same time and in the same or a similar locality." Ground Contract, Exhibit 1 at 6.

Vail 09 alleges the Elongation Reports that are in Vail 09's possession are inaccurate and incomplete, and were not completed in accordance with industry standards. The Ground Contract stated that "an engineering technician will provide in-place reinforcing steel observation…." Ground Contract, Exhibit 1 at 2. Ground prepared reports of the in-place reinforcing steel observation, and these reports fail to mention that certain studrails in the concrete floor slabs are defective, missing, or otherwise not in compliance with the Project's contract documents. Studrails, which are placed in the concrete slabs of a structure, provide reinforcement and increase the punching shear capacity for the Structure. When studrails are missing, defective, and/or not in conformance with the project

4

documents or applicable building codes, the Structure may become at risk to fail.

Vail 09 alleges Ground's reinforced steel reports lack clarity with regard to location, making it nearly impossible to determine where the steel is placed. The deficiencies in each of Ground's reports allegedly call into question all of Ground's testing and inspections of the Project. Ground was paid to provide complete and accurate reports of its observations and testing, but allegedly failed to provide all the services for which it received payment, and those services Ground did provide were allegedly deficient.

## II.     Procedural History

In response to Vail 09's allegations, Ground filed the present Motion to Dismiss and to Abstain from Jurisdiction, claiming that an action filed in Eagle County District Court is sufficiently parallel to this federal action to justify this Court's abstention in deference to the state proceeding. Specifically, the state action was initiated by the Project's general contractor, Layton Construction, which seeks fees allegedly owed by Vail 09 for construction services performed at the Project. Vail 09 filed counterclaims against Layton and its subcontractors for breach of contract, forfeiture of mechanics lien, breach of covenant of good faith and fair dealing, breach of express and implied warranties, fraud, negligent misrepresentation, and contribution and indemnification. Docket #13-1 at 21-27. Primarily, Vail 09 contends that Layton failed to perform work contemplated by the contract for construction services, failed to remedy deficient or defective work, and misrepresented the costs and amount of work actually completed. *Id.* In addition, Vail 09 filed cross claims against Layton's subcontractors for breach of contract, contribution and indemnification, negligence, fraud and negligent misrepresentation for their participation in the alleged improper conduct. *Id.* at 32-37.

Ground contends that the same or similar issues are raised by Vail 09 in this action.

Particularly, Ground argues that because the Project is the same in both cases, the negligence claims against Ground regarding post-tension cables and studrails are related to claims against Layton and two of the fifteen subcontractors in the state action, and the same discovery will be needed for such claims and damages, this case will be a "mirror image of a major part of the State Action and will be a duplicative and competing effort on all fronts." Docket #25 at 2-3.

Vail 09 responds that the federal and state actions are not similar, particularly because Ground is not a party in the state action and the claims brought against Ground here focus primarily on the Ground Contract, not on the contracts at issue in the state action. Ground replies that it has recently moved to intervene in the state action as a cross-claimant against Vail 09 and that the "cases are quickly becoming more closely related as time passes." Docket #25 at 2. Citing opinions from this district, Vail 09 argues that the state and federal actions should be examined for similarities "as they actually existed" at the time the present motion was filed. Docket #27.

## **DISCUSSION**

### I. Standard of Review

Rule 12(b)(1) empowers a court to dismiss a complaint for "lack of jurisdiction over the subject matter." Fed. R. Civ. P. 12(b)(1). Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case, but only a determination that the court lacks authority to adjudicate the matter. *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so). A court lacking jurisdiction "must dismiss the cause at any stage of the proceeding in which it becomes apparent that jurisdiction is lacking." *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974). A Rule 12(b)(1) motion to dismiss "must be determined from the allegations

of fact in the complaint, without regard to mere conclusory allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *See Basso*, 495 F.2d at 909. Accordingly, Vail 09 bears the burden of establishing that this Court has jurisdiction to hear its claims.

Further, under a 12(b)(1) motion, "a court has 'wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts." *Stuart v. Colorado Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001) (quoting *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995)). In such an instance, "a court's reference to evidence outside the pleadings does not convert the motion into a Rule 56 motion." *Stuart*, 271 F.3d at 1225.

Here, Ground seeks dismissal or a stay of the proceedings[1] pursuant to the abstention doctrines in *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976) and *Younger v. Harris*, 401 U.S. 37 (1971). The Court will analyze each doctrine to determine whether either applies to dismiss or stay this matter.

**II.** *Younger*

The *Younger* abstention doctrine, if applied, obligates the Court to dismiss an action in favor of an ongoing state proceeding. *Weitzel v. Div. of Occupational & Prof'l Licensing*, 240 F.3d 871, 875 (10th Cir. 2001) ("'*Younger* abstention is non-discretionary'; the district court must abstain once the conditions are met, 'absent extraordinary circumstances'") (quoting *Amanatullah v. State Bd. of Med. Examiners*, 187 F.3d 1160, 1163 (10th Cir. 1999)). According to the Supreme Court,

---

[1]"The Supreme Court has declined to address whether deference to state court proceedings under the *Colorado River* doctrine should result in a stay or a dismissal of the federal action." *Fox v. Maulding*, 16 F.3d 1079, 1082 (10th Cir. 1994). However, the Tenth Circuit has stated a preference for staying the proceedings if the trial court determines that the doctrine applies. *Id.*

7

federal courts are to avoid interference with ongoing state proceedings if the state court provides an adequate forum to present any federal constitutional challenges. *Younger v. Harris*, 401 U.S. 37 (1971). *Younger* abstention is jurisdictional. *See Steel Co. v. Citizens for a Better Env.,* 523 U.S. 83, 100 n. 3 (1998) (distinguishing case cited by dissent in support of hypothetical jurisdiction as decided on "*Younger* abstention, which we have treated as jurisdictional"). Courts address it at the outset because a determination that the district court lacked jurisdiction over a claim moots any other challenge to the claim, including a different jurisdictional challenge. Indeed, a Court has no power to decide an issue if it lacks jurisdiction. *See id.* at 93,102. Courts may address jurisdictional issues in any order they find convenient. *D.L. v. Unified Sch. Dist. No. 497*, 392 F.3d 1223, 1229 (10th Cir. 2004).

Pursuant to the *Younger* abstention doctrine, "[e]ven when a federal court would otherwise have jurisdiction to hear a claim, the court may be obliged to abstain when a federal court judgment on the claim would interfere with an ongoing state proceeding implicating important state interests." *Unified Sch. Dist. No. 497*, 392 F.3d at 1227-28. If a party is seeking equitable relief, the Court may dismiss the suit under abstention principles "because of 'scrupulous regard for the rightful independence of the state governments' and for the smooth working of the federal judiciary." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 718, 721 (1996) (quoting *Railroad Com. of Texas v. Pullman Co.*, 312 U.S. 496, 501 (1941) (citation omitted)).

This Court must abstain from exercising jurisdiction if the following conditions are met:

(1) there is an ongoing state criminal, civil, or administrative proceeding, (2) the state court provides an adequate forum to hear the claims raised in the federal complaint, and (3) the state proceedings involve important state interests, matters which traditionally look to state law for their resolution or implicate separately articulated state policies.

8

*Weitzel*, 240 F.3d at 875. While, undoubtedly, Vail 09's complaint in this action involves matters that traditionally look to state law for their resolution, conditions (1) and (2) are not met here. Certainly, there is an ongoing action regarding the Vail Project in state court, but Vail 09 did not bring any claims against Ground in that forum and Ground is not currently a party there; therefore, the Court cannot conclude that the state court provides an adequate avenue for relief.

Ground argues that, if this federal action proceeds, "[t]he finders of fact in each case could render markedly different verdicts regarding the relative fault of Vail 09, Layton, JD Steel, Ground and others involved in the steel framing and steel-reinforced concrete portions of the Project." Docket #13 at 4. However, "it is proper for a federal court to exercise jurisdiction over the claim of a genuine stranger to an ongoing state proceeding even though a federal decision clearly could influence the state proceeding by resolving legal issues identical to those raised in state court." *Unified Sch. Dist. No. 497*, 392 F.3d at 1230 (citing *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 924 (1975)). So long as the state-court stranger has its own distinct claim or defense to pursue, it may even be aligned with the state-court litigants in a common enterprise of vindicating a policy giving rise to their individual claims or defenses. *Id.* "But when, in essence, only one claim is at stake and the legally distinct party to the federal proceeding is merely an alter ego of a party in state court, *Younger* applies." *Id.* (citing *Doran*, 422 U.S. at 928 ("there plainly may be some circumstances in which legally distinct parties are so closely related that they should all be subject to the *Younger* considerations which govern any on of the them.")). Thus, the courts have found that family relationships (*D.L.*) and employer/employee relationships (*Hicks v. Miranda*, 422 U.S. 332 (1975) between distinct federal and state parties suffice to serve as "alter egos" and to justify application of the *Younger* doctrine to a state-court "stranger."

9

Here, there is no indication that Ground is "so closely related" to any of the parties in the state court action that it should be subject to *Younger* abstention here. It is undisputed that Ground had a contract with the Project Owner for engineering services; one of the (counter) defendants in the state action, Layton, had its own contract with the Project Owner for construction services. The remaining (cross claim) defendants were Layton's subcontractors on the Project. The claims raised by Vail 09 are specific to the contracts its has with each party. Consequently, the Court sees no "close" relationship between the state defendants and Ground and, thus, need not abstain from hearing the federal matter at hand. Ground's motion to dismiss pursuant to the *Younger* doctrine is **denied**.

### III. *Colorado River*

Unlike *Younger*'s requirement to abstain under certain conditions, abstention pursuant to *Colorado River* is discretionary. Generally, "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the federal court having jurisdiction." *Colorado River,* 424 U.S. at 817. However, in certain "exceptional circumstances," *id.* at 813, a federal court may stay a case in deference to parallel state proceedings. The decision to stay is driven by "considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Colorado River,* 424 U.S. at 817. Accordingly, the scope of the doctrine is "considerably more limited" than that of other abstention doctrines. *Id.* at 818; *see also Fox v. Maulding,* 16 F.3d 1079, 1080 (10th Cir. 1994) ("[a]lthough not a true form of abstention, the doctrine is often treated as a variety of abstention and is governed by the general principle that abstention from the exercise of federal jurisdiction is the exception, not the rule.") (citations omitted).

An order granting a *Colorado River* stay "necessarily contemplates that the federal court will have nothing further to do in resolving any substantive part of the case" because a district court may enter such an order only if it has full confidence that the parallel state proceeding will "be an adequate vehicle for the complete and prompt resolution of the issues between the parties." *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 277 (1988) (quoting *Moses H. Cone Memorial Hosp. v. Mercury Construction Corp.*, 460 U.S. 1, 13 (1983)).

Thus, the Tenth Circuit has held that a district court determining the application of the doctrine must first determine whether the state and federal proceedings are parallel. *Fox*, 16 F.3d at 1082. If they are not parallel, this Court must exercise its jurisdiction. *See Allen v. Board of Educ., Unified Sch. Dist. 436,* 68 F.3d 401, 403 (10th Cir. 1995). If the proceedings are parallel, the Court must proceed to determine whether "exceptional circumstances" suffice to defer to the state proceedings. *Id.*

"Suits are parallel if substantially the same parties litigate substantially the same issues in different forums." *Fox,* 16 F.3d at 1081. In making this determination, a court must assess the state proceedings "as they actually exist," not as they hypothetically "could have been brought." *Id.* The exact identity of parties and issues is not required. *United States v. City of Las Cruces*, 289 F.3d 1170, 1182 (10th Cir. 2002). Rather, the proceedings are sufficiently parallel if "the suits involve the same parties, arise out of the same facts and raise similar factual and legal issues." *Tyrer v. City of South Beloit,* 456 F.3d 744, 752 (7th Cir. 2006).

Here, the Court looks to the pleadings of the state and federal actions to determine whether the proceedings are parallel. First, the Court finds that the parties are not "substantially similar"; it is undisputed that Ground was not named as a party in the state action. While Ground argues that

11

it is currently attempting to intervene in the state action, the Court finds the outcome of such action too speculative at this stage to determine whether the state proceeding will "be an adequate vehicle for the complete and prompt resolution of the issues between the parties."

Even if the parties were similar in state and federal court, the Court finds that the issues raised in the two actions are not sufficiently parallel. Here, Vail 09 brings claims against Ground, an engineering consultant and contractor, for breach of contract and negligence in allegedly failing to provide a majority of reports required by the contract, failing to provide testing and inspection services in accordance with industry standards required by the contract, failing to observe post-tension tendon placement prior to the placement of concrete, and failing to provide adequate observation of in-place reinforcing steel evidenced by its failure to identify studrails that are missing, defective or otherwise not in compliance with the contract. Docket #1 at 6-7. While Vail 09 contends that the only claim/issue overlapping both federal and state actions is the claim concerning "studrails," Ground asserts that the "tendon placement" is also an issue raised in the state action. Nevertheless, upon a review of the pleadings, the Court finds that the federal action focuses primarily on Ground's obligations under its contract with Vail 09 with respect to its observation, testing, and inspection services provided at the construction site. The state action contains no claims or issues regarding the Ground contract. Although the Court recognizes that some issues raised in the federal action concerning the studrails and tendon placement *may* overlap with issues raised in the state action, such anticipated overlap does not demonstrate that the actions are sufficiently parallel to abstain pursuant to *Colorado River*.

Therefore, the Court concludes that the federal and state actions are not parallel pursuant to *Colorado River* and its progeny to justify abstention in deference to the state proceeding involving

Vail 09, Layton and its subcontractors.

Even if the actions were parallel, however, the Court finds that it would choose not to defer to the state proceeding. The Supreme Court in *Colorado River* identified several nonexclusive factors to consider in evaluating whether to defer, including 1) whether the state or federal court has assumed jurisdiction over property in dispute, 2) the inconvenience to the parties of the federal forum, 3) avoiding piecemeal litigation, and 4) the order in which the courts obtained jurisdiction. *Colorado River,* 424 U.S. at 818. The Supreme Court in *Moses H. Cone Hosp. v. Mercury Constr.*, 460 U.S. 1 (1983), added additional factors, including the vexatious nature of the litigation, *id.* at 18 n. 20, whether federal law provides the rule of decision, *id.* at 23, and the adequacy of the state court proceeding to protect the federal plaintiff's rights, *id.* at 28.

This list should not be applied as "a mechanical checklist." *Id.* at 16. Determining abstention requires "a careful balancing of the important factors as they apply in a given case, with balance heavily weighted in favor of jurisdiction." *Id.* "No one factor is necessarily the determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise is required." *Colorado River,* 424 U.S. at 818-19. *"Only the clearest of justifications will warrant dismissal." Moses H. Cone,* 460 U.S. at 16 (emphasis in original).

Here, there is no property in dispute and Ground has conceded no inconvenience in litigating the case in federal court in Denver. Moreover, the state court has not (at this stage) obtained jurisdiction over Ground. However, Ground argues that proceeding in this Court will result in piecemeal litigation, since the claims and issues are essentially the same as those raised in state court. Of course, if the actions were substantially parallel, the Court would agree with Ground;

13

however, the Court has already determined that the claims and issues, while in some respects similar, are not substantially the same. Consideration of the "additional" factors (the Court perceives nothing vexatious, federal law does not provide the rule of decision, but state law claims may be heard here pursuant to this Court's diversity jurisdiction, and Vail 09 did not bring action against Ground in state court) does not change the result. The Court finds insufficient justification for warranting a stay (or dismissal) of the proceedings in this case pursuant to *Colorado River*. Therefore, the motion to dismiss or abstain and the motion to stay pursuant to *Colorado River* and its progeny are **denied**.

## CONCLUSION

Under the circumstances and at this stage of the litigation, the Court concludes that it need not abstain from hearing this matter in deference to state court proceedings. Therefore, the Court **denies** Defendant's Motion to Dismiss and to Abstain from Exercising Jurisdiction [filed May 12, 2010; docket #13] and Defendant's Motion to Stay Case Pending Disposition of Related State Action [filed July 6, 2010; docket #32]. Pursuant to Fed. R. Civ. P. 12(a)(4)(A), Defendant shall file a responsive pleading on or before August 6, 2010.

Dated at Denver, Colorado this 20th day of July, 2010.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge